1
2
3
4
5
6
7
8
9
10
11
12
13

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,   ) | |
|    Plaintiff,   ) | CR 08-874-TUC-CKJ (JCG) |
|    ) | |
| vs.   ) | **REPORT &** |
|    ) | **RECOMMENDATION** |
| Osmin Antonio Alas,   ) | |
|    ) | |
|    Defendant.   ) | |
| ———————————————————) | |

14
15
16

        Pending before the Court is a Motion to Suppress Statement filed by Defendant Osmin

Antonio Alas on September 25, 2008.  (Doc. No. 14.) The United States filed a response to

the Motion and Defendant replied.  (Doc. Nos. 16 & 17.)

17
18
19
20
21

        This matter came before the Court for a report and recommendation as a result of a

referral made on June 12, 2008, pursuant to LRCrim 5.1. (Doc. No. 4.)  This matter was set

for evidentiary hearing and evidence was heard on October 3, 2008.  Defendant, who is not

in custody, was present and represented by counsel.  This matter was submitted following

oral argument at the conclusion of the hearing and taken under advisement.

22
23
24
25

        Having now considered the matter, the Magistrate Judge recommends that the District

Court, after its independent review, DENY Defendant's Motion to Suppress Statement as to

Defendant's pre-*Miranda* statements and DENY AS MOOT Defendant's Motion to Suppress

Statement as to Defendant's post-*Miranda* statements.

26

**FACTUAL FINDINGS**

27
28

        Defendant is a truck driver.  On June 10, 2008, at approximately 12:30 a.m.,

Defendant was driving a tractor/trailer on State Route 82 near Sonoita, Arizona when he was

1  stopped at the primary inspection area of a temporary Border Patrol checkpoint.  United
2  States Border Patrol Agent Brek Haymore testified that the primary inspection area of the
3  temporary checkpoint is marked by stop signs set out in the road near a Border Patrol Station.
4  The checkpoint is lit by portable artificial lighting.  The checkpoint also includes a secondary
5  inspection area, defined by cones set up on a paved area just off the highway.  Three agents
6  work the checkpoint: one at pre-primary inspection (the area where cars idle while waiting
7  to approach primary inspection), one at primary inspection, and one providing back-up
8  support near primary inspection.  Additional agents working inside the nearby Border Patrol
9  Station are available to assist as needed.  Signs posted along the road before the checkpoint
10  advise that all vehicles must stop. Agent Haymore testified that if a vehicle attempts to drive
11  through the checkpoint without stopping, it will be pursued by Border Patrol agents.

12      Agent Haymore testified that when Defendant's tractor/trailer stopped at the
13  checkpoint, he approached the cab and asked Defendant to state his citizenship.  Defendant
14  replied in English that he was a naturalized United States citizen.  Agent Haymore then asked
15  to see Defendant's bill of lading, a receipt which describes the trailer's load.  The bill of
16  lading stated that Defendant was hauling cardboard from Nogales, Arizona to a recycling
17  plant in New Mexico.  Agent Haymore then asked Defendant what he was hauling.
18  Defendant stated that he did not know.  Defendant appeared nervous.  Agent Haymore
19  testified that his questioning of Defendant lasted less than five minutes.

20      Agent Haymore testified that during the six months this temporary checkpoint was set
21  up, he routinely inspected tractor/trailers, routinely asked to see bills of lading and routinely
22  questioned the truck drivers about their haul.  Agent Haymore stated that when inspecting
23  tractor/trailers, he asks about their loads because there is a risk that the trailer is being used
24  to smuggle narcotics or aliens into the country.

25      Agent Eduardo Gonzalez testified that he was working at the temporary checkpoint
26  in Sonoita with his service canine on a two-week assignment away from his usual Border
27  Patrol station.  June 10, 2008 was Agent Gonzalez' third day working the checkpoint.  He
28

1    testified that his service canine, Kitty A, is trained to detect narcotics and concealed humans

2    hidden in vehicles.  Kitty A is trained to sit to indicate that she has alerted to a scent in the

3    vehicle.  Agent Gonzalez testified that according to his experience, Kitty A's alerts are

4    reliable.  Agent Gonzalez further testified that his typical routine while working with Kitty

5    A is to run her along every vehicle.  The only time vehicles are not inspected by Agent

6    Gonzalez and Kitty A is when Kitty A is on a required break.  On the night of June 10, 2008,

7    Agent Gonzalez and Kitty A had inspected two vehicles before Defendant's vehicle arrived

8    at the checkpoint.  One of those vehicles was a tractor/trailer.  Kitty A did not alert to either

9    vehicle.

10    Agent Gonzalez testified that while Agent Haymore was questioning Defendant,

11    Agent Gonzalez approached the front left side of the trailer with Kitty A.  Kitty A began to

12    act agitated and excited and her breathing increased in sound and intensity – all signals which

13    Agent Gonzalez recognized as a possible alert on the vehicle. Agent Gonzalez signaled to

14    Agent Haymore to send the tractor/trailer through secondary inspection; Agent Haymore

15    directed the Defendant to proceed to secondary.

16    Defendant pulled his tractor/trailer off the road into the secondary inspection area.

17    Agent Haymore followed Defendant's truck into the secondary inspection area but did not

18    speak to Defendant.  Defendant remained in the cab of the truck while Agent Gonzalez ran

19    Kitty A around the left side of the trailer.  In less than one minute, Kitty A alerted to the left

20    side of the trailer and sat at the back doors of the trailer.  Agent Gonzalez was unable to run

21    Kitty A around the entire vehicle because Kitty A sat to signal her alert.  Agent Gonzalez

22    testified that once Kitty A had alerted to the vehicle, he believed he had probable cause to

23    suspect that the trailer contained either narcotics or concealed humans.  Agent Gonzalez

24    returned Kitty A to her kennel in his service vehicle.

25    Agent Gonzalez approached the cab of truck and spoke to Defendant in English.  He

26    asked Defendant what he was hauling; Defendant replied in English that he did not know.

27    Agent Gonzalez asked to see Defendant's driver's log.  The log showed that Defendant had

28    not made any runs for eleven days.  Agent Gonzalez asked Defendant how he could make

1   a living if he had not worked in eleven days.  Defendant appeared nervous and made

2   statements to Agent Gonzalez which suggested that he was having some personal problems.

3   Defendant then told Agent Gonzalez that someone had told him the trailer contained

4   cardboard.  According to Agent Gonzalez, he spoke to Defendant for less than five minutes.

5       While Agent Gonzalez was talking to Defendant, other agents came out of the Border

6   Patrol station and approached the back of the trailer.  They told Agent Gonzalez that the

7   trailer was locked.  Agent Gonzalez asked Defendant if he had a key to the trailer and

8   Defendant said no.  The agents used a bolt cutter to open the trailer and subsequently found

9   808 kilograms of marijuana in the trailer.

10       Agent Haymore testified that once the marijuana was discovered, he asked Defendant

11   to step out of the truck.  He handcuffed Defendant and placed him under arrest.  Agents

12   Haymore and Gonzalez testified that Defendant was parked in the secondary inspection area

13   for approximately 10-15 minutes from the time he pulled into the secondary inspection area

14   to the time he was arrested.  After placing Defendant under arrest, Agent Haymore asked

15   Defendant if he wanted his *Miranda* rights read to him in English or Spanish; Defendant

16   stated that English was fine.  Agent Haymore read Defendant his *Miranda* rights in English

17   and Defendant stated that he wished to remain silent.  Agent Haymore placed Defendant in

18   a squad car and drove him approximately 40 yards to the Border Patrol Station.  He then read

19   him his *Miranda* rights again, this time from a DEA form.  Defendant again stated that he

20   wished to remain silent.

21   **PROCEDURAL MATTERS**

22       On August 25, 2008, the government noticed its intent to introduce into evidence

23   all statements made by the Defendant.  In the Motion to Suppress filed on September 25,

24   2008, the Defendant argued for suppression of statements he made after being given his

25   *Miranda* warnings.  In its Response, the government noted that the Defendant was not

26   challenging the admissibility of statements he made to Border Patrol Agents during

27   inspection at the checkpoint and therefore addressed only the issue of suppression of

28   Defendant's post-arrest statements.  In his Reply, Defendant then argued for the first time

- 4 -

1   that his pre-arrest statements, made before Defendant was *Mirandized*, should also be

2   suppressed.  Subsequently, the government noticed its intent to introduce only

3   Defendant's pre-*Miranda* statements and the government withdrew its notice of intent to

4   introduce post-*Miranda* statements.  (Doc. No. 20.)

5          At the Court's request, the parties filed supplemental briefs regarding the

6   admissibility of Defendants' pre-*Miranda* statements. (Doc. Nos. 18, 20 & 22.)   Based

7   on the government's withdrawal of its notice to introduce post-*Miranda* statements, the

8   only issue presented and considered at the hearing on October 3, 2008, was whether the

9   Defendant's pre-*Miranda* statements should be suppressed.

10

11                                    **ANALYSIS**

12          Defendant seeks to exclude admission of the statements he made to Agents Haymore

13   and Gonzalez while stopped at the checkpoint.   Defendant contends that the agents

14   improperly questioned him without first giving him *Miranda* warnings.

15          *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny govern the admissibility

16   of statements made during custodial interrogation in both state and federal proceedings.

17   Statements made while a defendant is in "custody or otherwise deprived of [his] freedom of

18   action in any significant way" which are not preceded by *Miranda* warnings are inadmissible

19   in evidence. *Id*. at 444.  A defendant is considered to be "in custody" for purposes of

20   *Miranda* if a reasonable person would believe that he or she was not free to leave.  *See*

21   *United States   v. Kim*, 292 F.3d 969, 973-74 (9th Cir. 2002) (citing *United States v.*

22   *Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987)).  The following factors are among those

23   likely to be relevant to deciding that question: "(1) the language used to summon the

24   individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the

25   physical surroundings of the interrogation; (4) the duration of the detention; and (5) the

26   degree of pressure applied to detain the individual."  *Id*. at 974 (citations omitted).

27          Generally, a brief detention at the border by immigration and customs officials of

28   persons presenting themselves for admission to the United States is not custody, even though

1  such persons are not free to leave or to refuse to be searched.  *United States v. Butler*, 249

2  F.3d 1094 (9th Cir. 2001).  In determining whether detention at a border patrol checkpoint

3  rises to the level of "custody" within the meaning of *Miranda*, courts must examine the

4  "objective circumstances of the interrogation."  *Id.* (citing *Stansbury v. California*, 511 U.S.

5  318, 323 (1994)).  Those circumstances include the language used by the officers, the

6  physical characteristics of the place where the question occurs, the degree of pressure applied

7  to detain the individual, the duration of the detention, and the extent to which the person was

8  confronted with evidence of guilt. *Id.* (citing *United States v. Hudgens*, 798 F.2d 1234, 1236

9  (9th Cir.1986)).  "Although the existence or non-existence of probable cause might be one

10  factor to consider in determining someone's custodial status in the twilight zone between

11  detention and custody, what ultimately matters to the determination of whether *Miranda* is

12  triggered is custody."  *Id.*

13       In the present case, Defendant was questioned for less than five minutes by Agent

14  Haymore.  Agent Haymore testified that the questions he asked Defendant are questions

15  which he routinely asks truck drivers.  Defendant was then questioned by Agent Gonzalez

16  at the secondary checkpoint, again for only a few minutes.  Agent Gonzalez asked Defendant

17  routine questions about the type of load he was carrying and the information in his driver's

18  log book; Defendant was not "confronted with evidence of guilt."  Defendant was not

19  confined, handcuffed or under arrest at the time of questioning.  He remained seated in the

20  cab of his truck during all questioning.  There is no evidence to suggest that Defendant was

21  unduly pressured by the agents.

22       Defendant argues that Agent Gonzalez had probable cause to arrest him as soon as

23  Kitty A became agitated while walking alongside his vehicle at primary inspection, and

24  therefore Agent Gonzalez should have read Defendant his *Miranda* rights prior to

25  questioning him at secondary inspection.  This argument fails for two reasons.  First, as

26  previously stated, the existence of probable cause is only one factor in determining whether

27  an agent is required to *Mirandize* a suspect at a border checkpoint.  Even if probable cause

28  existed at the time of questioning, Defendant was not "in custody" when he was questioned.

Second, although Kitty A's agitation, and later her alert, may have provided Agent Gonzalez with probable cause to search the trailer, it did not give Agent Gonzalez probable cause to arrest Defendant. The agents did not have probable cause to arrest Defendant until they searched the vehicle and discovered marijuana inside. By then, all questioning of Defendant had ceased. As soon as the marijuana was discovered, Defendant was arrested and read his rights.

Finally, the facts of this case are nearly identical to the facts in *United States v. Leasure*, 122 F.3d 837 (9th Cir. 1997), in which border patrol agents questioned a defendant at a border patrol checkpoint after suspecting that the defendant's vehicle had been altered to carry hidden narcotics and after a service canine alerted on the vehicle. The Court in *Leasure* found no *Miranda* violation.

Accordingly, because Defendant was not in custody at the time Agents Haymore and Gonzalez questioned him, the Defendant was not entitled to *Miranda* warnings at the checkpoint and Defendant's rights were not violated by the questioning.

## RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court

1. DENY Defendant's Motion to Suppress Statement to the extent Defendant seeks suppression of the statements that he made at the checkpoint prior to being read his *Miranda* rights;

2. DENY AS MOOT Defendant's Motion to Suppress Statement to the extent Defendant seeks suppression of his post-*Miranda* statements. (Doc. No. 14).

//

//

1    The parties have **ten (10) days** to serve and file written objections to the Report and

2    Recommendation.   The parties are advised that any objections should be filed with the

3    following caption:  **CR 08-874-TUC-CKJ.**

4    DATED this 10th day of October, 2008.

5

6    _____

7    Jennifer C. Guerin
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28