IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                         )<br>           Plaintiff,                        )<br>                                                         )<br>vs.                                                    )<br>                                                         )<br>OSMIN ANTONIO ALAS,              )<br>                                                         )<br>           Defendant.                     )<br>_____) | No. CR 08-874-TUC-CKJ<br>**ORDER** |

On or about October 14, 2008, Magistrate Judge Jennifer C. Guerin issued a Report and Recommendation [Doc. # 33] in in which she recommended the Court deny Defendant's Motion to Suppress as to Defendant's pre-*Miranda* statements and deny as moot Defendant's Motion to Suppress as to Defendant's pre-*Miranda* statements.  The Report and Recommendation notified the parties that they had ten days to file any objections.  Defendant has filed an objection.

*The Requirements of Miranda v. Arizona*

A custodial suspect's post-arrest statements given in response to interrogation is only admissible in the government's case-in-chief if the statements are given after a knowing and intelligent waiver of the suspect's *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (citations omitted) ("For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's 'waiver of *Miranda* rights must be

voluntary, knowing, and intelligent.'"). The burden is on the government to show that *Miranda* rights were administered and that the defendant agreed to waive them. *Miranda*, 384 U.S. at 475. Proof of waiver must be by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168-69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The obligation to "administer *Miranda* warnings attaches . . . 'only where there has been such a restriction on a person's freedom as to render him "in custody."'" *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (quoting *Oregon v. Mathianson*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). To determine whether a person is "in custody" under *Miranda*, "a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" *Stansbury*, 511 U.S. at 322 (citation omitted). Factors to be considered in determining whether a reasonable person would believe he was not free to leave include (1) the language used to summon the individual; (2) the extent to which the individual is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (quoting *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001), *cert. denied*, 122 S.Ct. 1117 (2002).

*Custody Analysis*

Defendant asserts that the factors considered by the magistrate judge, as a whole, favor a finding that Defendant was in custody. Defendant had been directed by road signs and stop signs which resulted in him stopping at the checkpoint. He was directed to produce a bill of lading and referred to the secondary inspection area. Defendant asserts that the words and actions used by the Border Patrol indicated that Defendant did not have a choice but to stop and answer questions. The Court agrees with Defendant that this factor favors a finding of custody.

Defendant disputes the magistrate judge's statement that he was not confronted with evidence of guilt. In support of this assertion, Defendant asserts that Agent Haymore asked

1  Defendant about the contents of the trailer even though Defendant had produced a bill of lading
2  and Agent Gonzalez asked how Defendant could make a living with 11 days of downtime.[1]
3  However, these questions, whether or not they are accusatory in nature as asserted by Defendant,
4  does not constitute evidence of guilt.  Defendant's answer may provide evidence of guilt or
5  provide an inference of guilt, but the questions themselves do no constitute confronting
6  Defendant with evidence of guilt.  Moreover, the agents testified that neither of them informed
7  Defendant that the canine Kitty-A had possibly alerted at the primary inspection and did alert
8  at the secondary inspection to the tractor-trailer.  Moreover, Agent Gonzalez did not learn that
9  the back of the tractor-trailer had been opened until he went to the back of the tractor-trailer after
10 speaking with Defendant – he could not have confronted Defendant with the evidence revealed
11 from the opened trailer.  The Court finds that Defendant was not confronted with evidence of
12 guilt and that this factor weighs in favor of a finding that Defendant was not in custody.

13     The primary inspection area was on the road that every vehicle had to travel through.  The
14 secondary inspection area was off the road in an area designated by cones.  In *Berkemer v.*
15 *McCarty*, 468 U.S. 4220, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Court held that the
16 roadside questioning of a motorist detained for a traffic stop was not custodial interrogation for
17 purposes of *Miranda*.  Although Defendant was not detained for a traffic stop, the considerations
18 discussed by the Court in *Berkemer* are instructive.  *See e.g., United States v. Galindo-Gallegos*,
19 244 F.3d 728 (9th Cir. 2001).  Roadside questioning "is quite different from stationhouse
20 interrogation, which frequently is prolonged, and in which the detainee often is aware that
21 questioning will continue until he provides his interrogators the answers they seek." *Id*., at 438.
22 Further, just as the "typical traffic stop is public, at least to some degree[,]" *id*, at 438, contact
23 with the Defendant at both the primary and secondary inspection areas was subject to view of

---

[1] Agent Haymore testified that he routinely asked drivers what they are hauling to determine if it will match the information on the bill of lading.

1   passersby.² "This exposure to public view both reduces the ability of an unscrupulous [agent]
2   to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear
3   that, if he does not cooperate, he will be subjected to abuse." *Id.*, at 438. The Court finds this
4   factor weighs in favor of a finding that Defendant was not in custody.

5   Although Defendant acknowledges that his detention was relatively short, he cites *United
6   States v. Hernandez*, 476 F.3d 791 (9th Cir. 2007), in support of his assertion that brief
7   questioning can be found to be custodial interrogation. However, in *Hernandez*, the defendant
8   was surrounded by six agents, ordered out of his car, ordered to place his hands on the top of the
9   vehicle, and was subjected to a pat-down search. In this case, Defendant remained in his vehicle
10  during the relatively short detention. At different times during the encounter, one agent was with
11  Defendant, while, at other times, two agents were with Defendant. That other agents may have
12  been at the back of the tractor-trailer does not set forth circumstances similar to *Hernandez*. The
13  Court finds the duration of the detention is a factor that weighs against a finding of custody.

14  Defendant asserts that the degree of pressure applied to detain him, including
15  psychological restraints, warrants a finding that this factor favors a finding of custody. In
16  support of this assertion, Defendant cites to the posted signs that required vehicles to stop, three
17  agents were in the primary inspection area, one agent was questioning him while another walked
18  a canine near the tractor-trailer in the primary inspection area, and additional agents arrived
19  when Defendant was relocated to the secondary inspection area. The circumstances set forth by
20  Defendant simply do not provide the level of psychological coercion that constitutes a significant
21  degree of pressure. Unlike *United States v. Beraun-Panez*, 812 F.2 d578 (9th Cir. 1987), in
22  which officers repeatedly accused defendant of lying, confronted defendant with false or
23  misleading witness statements, employed good guy/bad guy tactics, took advantage of
24  defendant's insecurities about his alien status, kept defendant isolated, and insisted on the

---

²Defendant argues that he was isolated from other motorists by the relocation to the secondary inspection area. However, Agent Gonzalez testified that the secondary inspection area was not enclosed and was "just a little bit east of the primary inspection area and off to the shoulder of the side of the road." Transcript of 10/2/08 Hearing, p. 56; *see also*, Ex. 3.

- 4 -

1  "truth," the agents in this case simply directed Defendant to the secondary inspection area. The

2  Court finds this factors weighs in favor of a finding that Defendant was not in custody.

3  Defendant asserts that the agents had established "a setting from which a reasonable

4  person would believe that he or she was not free to leave." *Kim*, 292 F.3d at 973-75. However,

5  the Ninth Circuit has stated:

> [C]ases have . . . held that *Miranda* warnings need not be given in a border crossing situation unless, and until, the questioning agents have probable cause to believe that the person has committed an offense . . . . Stops and routine questioning are the norm at the border in the primary inspection areas. In most cases, the earliest that a person could be in custody is at the point when [he] is moved into a secondary inspection area and asked to exit [his] vehicle while it is searched.

*United States v. Leasure*, 122 F.3d 837, 849 (9th Cir. 1997), *cert. denied*, 522 &U.S. 1065

(1998).[3] When Defendant was relocated to the secondary inspection area, he was not asked to

exit his vehicle. Moreover, "[a]lthough the existence or non-existence of probable cause might

be one factor to consider in determining someone's custodial status in the zone between

detention and custody, what ultimately matters to the determination of whether *Miranda* is

triggered is custody, which is determined not by the existence of probable cause, but by looking

to the 'objective circumstances of the interrogation.'" *United States v. Butler*, 249 F.3d 1094,

1099 (9th Cir. 2001), *citations omitted*.

In considering the objective circumstances of the detention, the Court finds that

Defendant was not in custody until he was removed from the tractor trailer. *See e.g., United

States v. Butler*, 249 F.3d 1094, 1100 (9th Cir. 2001) (mere detention in border station's security

office while search is conducted is not custody); *see also United States v. Fernandez-Ventura*,

132 F.3d 844, 847 (1st Cir. 1998). Accordingly, any statements made by Defendant prior to that

time are not subject to the requirements of *Miranda*.

---

[3]Defendant argues that *Leasure* supports his assertion that he was in custody when he was relocated to the secondary inspection area. However, *Leasure* indicates that a finding of custody *may* be appropriate upon relocation to the secondary inspection area and removal of the defendant from the vehicle. Here, Defendant was not removed from the vehicle when it was relocated to the secondary inspection area. Moreover, as the case law indicates, there is not a bright-line rule for a finding of custody. Rather, the Court is to consider the circumstances of the encounter.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation [Doc. # 33] is ADOPTED.
2. Defendant's Motion to Suppress as to pre-*Miranda* statements is DENIED.
3. Defendant's Motion to Suppress [Doc. # 14] as to post-*Miranda* statements is DENIED.

DATED this 7th day of November, 2008.

_____
Cindy K. Jorgenson
United States District Judge